**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:16-CV-00048-GNS-LLK**

**BRANDON L. MASON**                                                                                                          **PLAINTIFF**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security**                         **DEFENDANT**

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Plaintiff filed a complaint seeking judicial review of the final decision of the Commissioner denying his claim for Social Security disability benefits pursuant to 42 U.S.C. 405(g). The Court referred the matter to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. 636. The fact and law summaries of Plaintiff and Defendant are at Dockets 17 and 20, and the matter is ripe for determination.

The RECOMMENDATION will be to REMAND this matter to the Commissioner for a new decision because the administrative law judge's (ALJ's) weighing of the medical opinions of the treating physician was not supported by substantial evidence and did not comport with applicable legal standards.

### Background facts and procedural history

This is Plaintiff's second claim for Social Security disability benefits. The prior administrative law judge (ALJ) denied the first claim in December 2005. In January 2013, Plaintiff filed a second application for benefits. The ALJ, whose decision is presently before the Court on judicial review, denied the second claim in December 2014.

The following summary of the decisions on Plaintiff's claims and the supporting medical evidence is in chronological order because it is necessary to understand which evidence was before which decisionmaker.

In March 2004, Plaintiff filed claims for Title II (disability insurance) and Title XVI (supplemental security income) benefits, alleging disability, in part, due to degenerative disc disease.

In May 2005, a lumbar MRI revealed, among other things, "broad based disc displacement or protrusion at L4-L5 that is slightly greater on the left and narrowing the left neural foramen." Administrative record (AR), p. 338.

In July 2005, Plaintiff's treating physician, Carol Peddicord (Dr. Peddicord), completed the Medical Assessment Of Ability To Do Work-Related Activities (Physical) form, finding, among other things, that Plaintiff's "herniated disc with lumbar radiculopathy" renders him incapable of standing/walking for more than 2 hours total in an 8-hour day; incapable of sitting for more than 2 hours total in an 8-hour day; and "unable to do any strenuous work" or "any manual labor." AR, pp. 340-342.

In December 2005, the prior ALJ issued a decision denying Plaintiff's claims and finding that he was not disabled through the date of the decision. Prior decision, AR, pp. 103-114.

In March 2012, a lumbar CT scan revealed, among other things, "moderate disc protrusion seen at L4-L5 with a relative central canal stenosis and narrowing of both neural foramina." AR, p. 277.

In January 2013, Plaintiff protectively filed a new claim for Title XVI benefits.

In December 2014, the current ALJ denied Plaintiff's claim. Current decision, AR, pp. 475-485.

In January 2015, a lumbar MRI revealed, among other things, "L4-5: There is facet hypertrophy and a broad-based disc bulge. There is mild bilateral neuroforaminal stenosis." AR, p. 471.

In August 2015, a thoracic CT scan revealed, among other things, "T4 burst fracture." AR, p. 62.

In March 2016, the Appeals Council declined to review the ALJ's decision from December 2014, thereby rendering the current ALJ's decision the Commissioner's final decision (presently before this Court upon judicial review). AR, pp. 1 and 8.

**Res judicata did not require the ALJ to reject Dr. Peddicord's 2005 opinions.**

In July 2005, Dr. Peddicord completed the Medical Assessment Of Ability To Do Work-Related Activities (Physical) form, finding, among other things, that Plaintiff's "herniated disc with lumbar radiculopathy" renders him incapable of standing/walking for more than 2 hours total in an 8-hour day; incapable of sitting for more than 2 hours total in an 8-hour day; and "unable to do any strenuous work" or "any manual labor." AR, pp. 340-342.

Plaintiff's sole contention upon judicial review is that "the [ALJ] erred in failing to give controlling weight to the opinion of [her] treating physician [Dr. Peddicord]." Plaintiff's Fact and law summary, Docket 17, p. 3. Before considering that argument, however, the Court must consider the threshold issue whether administrative res judicata required the ALJ to reject Dr. Peddicord's opinions. Both the ALJ and the Commissioner rely on res judicata in support of rejecting Dr. Peddicord's opinions. ALJ's decision at AR, p. 482 citing Drummond v. Commissioner, 126 F.3d 837 (6th Cir.1997); Commissioner's fact and law summary, Docket 20, pp. 3-7.

Drummond held that, when the Commissioner has made a final administrative decision concerning a claimant's entitlement to benefits, res judicata binds the Commissioner to that decision, including any prior RFC finding, absent evidence of medical improvement or changed circumstances.

In promulgating Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902, the Commissioner officially recognized Drummond as governing law for cases arising within the Sixth Circuit. The Ruling clarified that res judicata applies "only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924." "[C]ertain subsidiary findings, such as a finding concerning the credibility of a claimant's testimony or statements, … does not constitute a finding that is required at a step in the sequential evaluation process for determining disability."

3

There is a split of authority concerning whether Drummond only benefits claimants by prohibiting ALJs from (arbitrarily) increasing RFCs from prior decisions absent evidence of medical improvement, or whether Drummond also disadvantages claimants by binding ALJs to prior RFCs (as opposed to allowing ALJs to determine RFCs de novo) absent evidence of medical worsening. This Court has interpreted Drummond as only benefitting claimants. Hogancamp v. Commissioner, 5:13-CV-00097-LLK, 2014 WL 1681121 (W.D.Ky.); but see Layman v. Commissioner, 2016 WL 463354 (S.D.Ohio) (finding a presumption of continuing non-disability).

The ALJ's reliance on Drummond for rejecting Dr. Peddicord's opinions is unpersuasive because: 1) The weight given to a treating physician's opinion is a subsidiary finding not required at a step of the sequential evaluation process. 2) Drummond did not bind the ALJ to the prior RFC absent evidence of medical worsening. Hogancamp, supra. 3) Even if Drummond did require evidence medical worsening, the ALJ implicitly found such worsening when he decreased Plaintiff's RFC from the prior RFC.[1]

Res judicata did not require the ALJ to reject Dr. Peddicord's 2005 opinions.

### The ALJ was not entitled to reject Dr. Peddicord's opinions from 2005 because they pre-dated Plaintiff's current claim filed in January 2013.

The Commissioner cites no persuasive Sixth Circuit authority (and the Court is unaware of any) in support of her argument that the ALJ was entitled to reject Dr. Peddicord's opinions from 2005 simply because they pre-dated Plaintiff's current claim filed in January 2013.

Wirth v. Commissioner, 87 Fed.Appx. 478, 2003 WL 23156654 (6th Cir.) (cited by the Commissioner at Docket 20, p. 4) held that evidence dated after the date last insured (for Title II

---

[1] The prior ALJ found that Plaintiff has "no 'severe' [i.e., vocationally-significant] physical condition and that [Plaintiff] retains the exertional capacity for a wide range of work activity [at all exertional levels]." Decision, AR, p. 108. The current ALJ found that Plaintiff has an RFC for a limited range of light work requiring no more than 4 hours per work day of standing/walking. Decision, AR, p. 479. In decreasing Plaintiff's RFC from no exertional limitation to exertional limitations restricting him to a limited range of light work, the ALJ implicitly found a medical worsening.

4

purposes) is relevant only if it "relate[s] back to the claimant's condition prior to the expiration of her date last insured." The present Title XVI claim does not depend upon the date last insured.

Oliver v. Secretary, 804 F.2d 964 (6th Cir.1986) (cited at p. 4) held that evidence obtained after an ALJ's decision is "material" (as contemplated by Sentence 6 of 42 U.S.C. 405(g)) only if it relates back to the claimant's condition on or before the date of the ALJ's decision. Plaintiff has not moved for a Sentence-6 remand.

**The ALJ's weighing of Dr. Peddicord's opinions was erroneous.**

In July 2005, Plaintiff's treating physician, Carol Peddicord, completed the Medical Assessment Of Ability To Do Work-Related Activities (Physical) form, finding, among other things, that Plaintiff's "herniated disc with lumbar radiculopathy,[2] renders him incapable of standing/walking for more than 2 hours total in an 8-hour day; incapable of sitting for more than 2 hours total in an 8-hour day; and "unable to do any strenuous work" or "any manual labor." AR, pp. 340-342.

In February 2014, Dr. Peddicord's treatment notes state that "I don't see that [patient] can work in this condition." AR, p. 458. In September 2014, Dr. Peddicord stated "I don't feel [patient] is physically or emotionally able to engage in any work for gainful employment." AR, p. 470.

An ALJ must give a treating source's medical opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. 416.927(c)(2). "When [an ALJ does] not give

---

[2] According to Homan v. Commissioner, 2015 WL 4198986 (W.D.Mo.):
"Lumbar radiculopathy refers to disease involving the lumbar spinal nerve root. This can manifest as pain, numbness, or weakness of the buttock and leg. Sciatica is the term often used by lay people. Lumbar radiculopathy is typically caused by a compression of the spinal nerve root. This causes pain in the leg rather than in the lumbar spine, which is called 'referred pain." ... Lumbar radiculopathy symptoms may include pain, tingling, numbness, weakness, and reflex loss. Lumbar radiculopathy symptoms may present in the leg and foot."

the treating source's opinion controlling weight, [the ALJ must] apply the factors [listed at Sections 416.927(c)(2) through (6)] in determining the weight to give the opinion."[3]

The ALJ's written decision must always give "good reasons" for the weight given to the treating source's medical opinion. Section 416.927(c)(2). The "good reasons" must be stated in the decision itself, and it is insufficient that (upon suggestion by the Commissioner or on the Court's own initiative) the Court is able to locate unstated good reasons in the administrative record. Wilson v. Commissioner, 378 F.3d 541 (6th Cir.2004).[4]

The ALJ was not required to give controlling weight to Dr. Peddicord's opinions from 2014 because they do not qualify as "medical opinions" as contemplated by Section 416.927(c)(2). See Section 416.927(d)(1) and (2) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"; such statements are entitled to no "special significance" because the ultimate disability decision is "reserved to the Commissioner").

The ALJ, however, failed to identify substantial reasons for declining to give controlling weight to Dr. Peddicord's opinions from 2005. Additionally, the ALJ's decision did not apply (or even mention) the factors he was obliged to apply upon not giving the opinions controlling weight.[5]

The ALJ declined to give the July 2005 opinions controlling weight for the same reasons they were rejected in a prior ALJ's decision. AR, p. 482. The prior decision, in turn, rejected the opinions because they were "inconsistent with [Dr. Peddicord's] actual treatment notes." AR, p. 107. Specifically, while Dr. Peddicord reported that Plaintiff has a herniated disc with lumbar radiculopathy,

---

[3] The factors are length of the treatment relationship and frequency of examination, nature and extent of treatment, supportability of the opinion based on medical signs and laboratory findings, consistency of the opinion with the record as a whole, the physician's specialization (if any), and any other relevant factor.

[4] Wilson held that this type of harmless-error analysis is inappropriate because Section 416.927(c)(2) is a procedural regulation that bestows a quasi-substantive right upon claimants: "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Id. at 544.

[5] These are the factors listed in n.3, supra.

6

the lumbar MRI from May 2005 allegedly "revealed [Plaintiff] to only having bulging[6] at L4-5, but the other discs were unremarkable." AR, p. 107. The May 2005 lumbar MRI, in fact, revealed, among other things, "broad based disc displacement or protrusion[7] at L4-L5 that is slightly greater on the left and narrowing the left neural foramen." AR, p. 338. Dr. Peddicord's finding of relative inability to stand/walk due to herniated disc with lumbar radiculopathy was well supported by the contemporaneous treatment notes.

Additionally, the ALJ found no "current or relevant medical evidence … that would suggest these limitations [from 2005] were in fact true at the time." Decision, AR, p. 482. The lumbar CT scan from March 2012, in fact, revealed "moderate disc protrusion seen at L4-L5 with a relative central canal stenosis and narrowing of both neural foramina" (AR, p. 277).

The ALJ's decision failed to identify substantial evidence for declining to give controlling weight to Dr. Peddicord's 2005 opinions and failed to give good reasons for the weight given to those opinions.

**Plaintiff is not entitled to a Sentence-6 remand.**

The ALJ's decision was issued in December 2014. AR, p. 485. Plaintiff relies on a lumbar MRI from January 2015 (AR, p. 471) and a thoracic CT scan from August 2015 (AR, p. 62) as "corroborat[ing]" (Docket 17, p. 5) the results of the lumbar MRI from May 2005 (AR, p. 338) and the lumbar CT scan from March 2012 (AR, p. 277). Plaintiff fact and law summary, Docket 17, p. 5.

---

[6] A bulging disc is not the same as a herniated disc. Bulging discs are more common, while herniated discs are more likely to cause pain. As explained in Barbera v. Commissioner, 2012 WL 2458284 (E.D.Mich.) quoting Mayo Clinic website:
"A bulging disk extends outside the space it should normally occupy. The bulge typically affects a large portion of the disk, so it may look a little like a hamburger that's too big for its bun. The part of the disk that's bulging is typically the tough outer layer of cartilage. Usually bulging is considered part of the normal aging process of the disk and is common to see on MRIs of people in almost every age group.
A herniated disk, on the other hand, results when a crack in the tough outer layer of cartilage allows some of the softer inner cartilage to protrude out of the disk. The protrusion of inner cartilage in a herniated disk usually happens in one distinct area of the disk and not along a large component of the disk, which is more typical of a bulging disk. Herniated disks are also called ruptured disks or slipped disks."
[7] According to Chabot v. Commissioner, 2014 WL 2106498 n.4 (D.N.H.): "Disc protrusion is synonymous with a herniated disc and is the protrusion of a degenerated or fragmented invertebral disc."

7

Under Sentence 6 of 42 U.S.C. 405(g), a reviewing court may consider evidence that was not before the ALJ only for the limited purpose of determining whether to grant a Sentence-6 remand. Cline v. Commissioner, 96 F.3d 146 (6th Cir.1996). A Sentence-6 remand is warranted only if, upon a showing of good cause for late submission of the evidence, the evidence is material. Evidence is material only if there is a "reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Secretary, 865 F.2d 709, 711 (6th Cir. 1988). New evidence that is cumulative with respect to evidence that was already before the ALJ is not material. Allen v. Commissioner, 561 F.3d 646, 654 (6th Cir. 2009).

Plaintiff has not moved for a Sentence-6 remand, and he is not demonstrated entitled to one because the new evidence appears to be "corroborative," cumulative, and immaterial.[8]

## RECOMMENDATION

The Magistrate Judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision and further administrative proceedings deemed necessary and appropriate by the Commissioner.

---

[8] Nevertheless, because Plaintiff is entitled to an ordinary remand (pursuant to Sentence 4), there is no legitimate reason why, upon remand, the ALJ should not consider all of the evidence, including the new evidence that was not before him.

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.1984).