UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00048-GNS-LLK

BRANDON L. MASON                                                           PLAINTIFF

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                            DEFENDANT

# MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendant's Objections to the Magistrate Judge's Report and Recommendation (DN 22). For the reasons discussed below, Defendant's objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation ("R. & R.") (DN 21) is **ADOPTED** to the extent it is not inconsistent with this opinion. This matter is **REMANDED** to the Commissioner of Social Security for a new decision pursuant to sentence four of 42 U.S.C. § 405(g).[1]

## I.   BACKGROUND

Plaintiff Brandon Mason ("Mason") applied for disability insurance benefits and supplemental security income in 2004, alleging disability due, in part, to back problems. (Administrative Record 103-4 [hereinafter R.]). After a hearing on the application, Administrative Law Judge Joan Lawrence ("ALJ Lawrence") found, *inter alia*, that Mason had no severe physical impairments and thus retained "the residual functional capacity for the exertional . . . functions of work . . . ." (R. 112-13). Given this, as well as Mason's age,

---

[1] At the time of the R. & R., Carolyn W. Colvin was the acting Commissioner of Social Security. That position is now held by Nancy A. Berryhill. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted as Defendant.

education, past work experience, and testimony from a vocational expert, ALJ Lawrence decided that Mason was capable of performing his past work as a construction worker/roofer. (R. 112-13). In turn, she concluded that Mason had not been under a "disability," as defined in the Social Security Act, and denied his claims. (R. 113).

Mason filed another claim for supplemental security income on January 31, 2013, alleging that his back, depression, nerves, and high blood pressure rendered him disabled as of January 18, 2013. (R. 200, 221, 225). That claim was denied initially and on reconsideration. (R. 129-30). Mason participated in a hearing before Administrative Law Judge Todd Spangler ("ALJ Spangler") on October 1, 2014. (R. 74). Subsequently, ALJ Spangler issued a decision on December 30, 2014, in which he found that Mason had not been under a disability from January 18, 2013, through the date of the decision, and denied his claim. (R. 475).

In reaching his decision, ALJ Spangler evaluated Mason's claim under the five-step sequential evaluation process promulgated by the Commissioner. (R. 475-84). At the first step, ALJ Spangler found that Mason had not engaged in substantial gainful activity since January 18, 2013, the alleged onset date. (R. 477). At the second step, ALJ Spangler determined that Mason's degenerative disc disease, affective disorder, and anxiety-related disorder were "severe" impairments within the meaning of the regulations, but that his alcohol and drug use were "non-severe" impairments. (R. 477). Next, ALJ Spangler concluded that Mason did not have an impairment or combination of impairments that met or equated to one of the listed impairments in Appendix 1. (R. 478-79). Fourthly, ALJ Spangler found that Mason had the residual functional capacity to perform a reduced range of light work. (R. 479). More specifically, he found that Mason could stand or walk no more than four hours during an eight-hour workday; sit for no more than six hours in an eight-hour workday; climb ramps and stairs occasionally, but

not ladders, ropes, or scaffolds; and could stoop, kneel, crouch, and crawl occasionally. (R. 479). ALJ Spangler also determined that, in light of Mason's affective disorder and anxiety-related disorder, Mason could perform up to three-step instructions, but that he could have no more than occasional contact with the public and work only in an environment where changes are introduced gradually and infrequently. (R. 479, 483). Furthermore, relying on testimony from a vocational expert, ALJ Spangler found that Mason was unable to perform any of his past relevant work. (R. 483). However, at the fifth step, ALJ Spangler deduced that, given Mason's residual functional capacity, age, education, past work experience, and testimony from the vocational expert, Mason was capable of performing a significant number of jobs that exist in the national economy; therefore, he concluded that Mason was not disabled.

Mason filed a request for review, which the Appeals Council denied. (R. 2-14). Consequently, Mason filed suit in this Court seeking judicial review of the Commissioner's final decision. (Compl., DN 1). The matter was referred to the Magistrate Judge, who recommended that this matter be remanded to the Commissioner of the Social Security Administration for a new decision because ALJ Spangler erroneously weighed an opinion from Mason's treating physician, Dr. Carol Peddicord. (Social Security Order, DN 16; R. & R. 1, DN 21). The Commissioner objects to the Magistrate Judge's recommendation, arguing that *Drummond* and Acquiescence Ruling 98-4(6) prevented ALJ Spangler from considering an opinion Dr. Peddicord provided in 2005 because ALJ Lawrence had already rejected it, and that, even if *Drummond* and Acquiescence Ruling 98-4(6) were inapplicable, ALJ Spangler had good reason to discount all of Dr. Peddicord's opinions. (Def.'s Objs., DN 22). Mason declined to respond. The matter is ripe for decision.

## II.     JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. *See* 42 U.S.C. § 405(g).

## III.    STANDARD OF REVIEW

The parts of a Magistrate Judge's R. & R. to which objections are raised are reviewed by the district judge *de novo*. 28 U.S.C. § 636(b)(1). This differs from the standard applied to the Commissioner's decision. That decision, rendered by an ALJ, is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)). Because the Sixth Circuit has recognized that "the treating physician rule is a substantial right that 'provides claimants with an important procedural safeguard,'" *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 419 (6th Cir. 2012) (quoting *Bowen*, 478 F.3d at 747), a reviewing court generally must reverse and remand if an ALJ fails to provide "good reasons" for rejecting all or part of a treating physician's opinion. *Wilson*, 378 F.3d at 544-48.

## IV.     DISCUSSION

The Magistrate Judge recommended remand because ALJ Spangler "failed to identify substantial evidence for declining to give controlling weight to Dr. Peddicord's 2005 opinion[]

4

and failed to give good reasons for the weight given to [that opinion]." (R. & R. 7). The Court agrees with the Magistrate Judge.

In a "Medical Assessment Of Ability To Do Work-Related Activities (Physical)" form prepared in July 2005, Dr. Peddicord opined that Mason had a herniated disc and lumbar radiculopathy and, as a result, was unable to do any strenuous work or any manual labor. (R. 341-42). She indicated, among other things, that Mason could lift and carry less than 15 pounds occasionally (meaning very little to 1/3 of an eight-hour day) and less than 10 pounds frequently (meaning from 1/3 to 2/3 of an eight-hour day); stand or walk for no more than two hours in an eight-hour day, but no more than one hour without interruption; sit for no more than two hours in an eight-hour day, but less than one hour without interruption; and that he could never climb, stoop, kneel, crouch, or crawl. (R. 340-41). Dr. Peddicord's opinion followed a May 2005 lumbar MRI that revealed "broad based disc displacement or protrusion at L4-L5 that is slightly greater on the left and narrowing the left neural foramen." (R. 337-38).

The Sixth Circuit has provided the following comprehensive explanation of the standards that must be employed by ALJs when they assign weight to medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in [the] case record. If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of

5

> the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.
>
> The Commissioner is required to provide good reasons for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (internal quotation marks and citations omitted).

In determining Mason's residual functional capacity, ALJ Spangler rejected Dr. Peddicord's 2005 opinion, explaining his reasoning as follows:

> The undersigned notes that on July 22, 2005 Dr. Peddicord submitted a residual physical functional capacity, which places the claimant's ability to perform less than light exertional level of work. The undersigned rejects the residual functional capacity of Dr. Peddicord because it is not supported by any current or relevant medical evidence. This residual physical functional capacity was considered in the prior decision and was not accepted. There is no new and material evidence now that would suggest these limitations were in fact true at the time[.] Therefore, the undersigned does not accept this opinion because they are not supported by the actual medical evidence, and because an administrative law judge has previously made findings concerning the claimant's residual functional capacity, Acquiescence Ruling 98-4(6) is also applicable. This ruling provides for implementation of the decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), which holds that "absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."

(R. 482). It is undisputed that Dr. Peddicord's 2005 opinion qualifies as a treating source opinion. Because ALJ Spangler failed to give good reasons for rejecting it, remand is required.

Despite the Commissioner's protestations to the contrary, *Drummond* and Acquiescence Ruling 98-4(6) have no bearing on ALJ Spangler's consideration of Dr. Peddicord's 2005 opinion. These authorities require a latter ALJ to follow an earlier ALJ's findings—findings of

6

residual functional capacity and all others that were required at a step in the sequential evaluation process—in the absence of new material evidence or changed circumstances. *Drummond*, 126 F.3d at 842-43; Acquiescence Ruling 98-4(6), 1998 SSR LEXIS 5 (June 1, 1998); *Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425-26 (6th Cir. 2015).[2] Here, ALJ Lawrence found that Mason had no physical impairments and retained "the residual functional capacity for the exertional . . . functions of work . . . ." (R. 112-13). ALJ Spangler, however, did not follow ALJ Lawrence's findings. Instead he made his own, concluding that, based on the evidence before him, Mason's "degenerative disc disease, with residual of limited range of motion would limit him to perform less than a full range of light exertional level of work with additional

---

[2] The Magistrate Judge gave three reasons why ALJ Spangler's reliance on *Drummond* was unpersuasive: "1) the weight given to a treating physician's opinion is a subsidiary finding not required at a step of the sequential evaluation process. 2) Drummond did not bind the ALJ to the prior RFC absent evidence of medical worsening . . . . 3) Even if Drummond did require evidence [of] medical worsening, the ALJ implicitly found such worsening when he decreased Plaintiff's RFC from the prior RFC." (R. & R. 4). The Court declines to adopt the Magistrate Judge's categorical conclusion that "Drummond did not bind the ALJ to the prior RFC absent evidence of medical worsening . . . ."

The Magistrate explained his reasoning as follows:

> There is a split of authority concerning whether Drummond only benefits claimants by prohibiting ALJs from (arbitrarily) increasing RFCs from prior decisions absent evidence of medical improvement, or whether Drummond also disadvantages claimants by binding ALJs to prior RFCs (as opposed to allowing ALJs to determine RFCs de novo) absent evidence of medical worsening. This Court has interpreted Drummond as only benefitting claimants.

(R. & R. 4). The Sixth Circuit, however, has indicated that *Drummond* applies to the Commissioner and claimants equally. *See Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 515 (6th Cir. 2011) (holding that ALJ was justified, under *Drummond*, in adopting a previous ALJ's findings that the claimant had a "limited education" because the claimant "introduced no new or additional evidence with respect to illiteracy versus limited education." (internal quotation marks omitted)); *see also Blankenship*, 624 F. App'x at 425 ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) . . . clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition.").

7

limitations." (R. 483). In so doing, ALJ Spangler was required to "evaluate every medical opinion" he received and assign them weight, Dr. Peddicord's 2005 opinion included. 20 C.F.R. § 404.1527(c); Soc. Sec. Rul. 96-7p.

ALJ Spangler noted that Dr. Peddicord's opinion "was considered in the prior decision and was not accepted." (R. 482). Assuming, as the Magistrate Judge did, that ALJ Spangler was attempting to adopt the reasons ALJ Lawrence supplied in support of her decision to reject Dr. Peddicord's opinion, the Commissioner is still not spared remand. (R. & R. 6-7). The reasons ALJ Lawrence provided in support of his decision to reject Dr. Peddicord's opinion were deficient.

ALJ Lawrence rejected Dr. Peddicord's opinion in whole because it was "inconsistent with [the] actual treatment notes." (R. 107). She explained that "while [Dr. Peddicord] reported that [Mason] had a herniated disc with lumbar radiculopathy, diagnostic testing, i.e., [the 2005] MRI scan of the lumbar spine revealed [Mason] to only have bulging at L4-5, but the other discs were unremarkable." (R. 107). She went on to proclaim, "I find Mr. Mason to have evidence of a 'mild' disc protrusion at L4-5, but that this condition does not significantly interfere with his ability to function[,]" noting that "MRI scan of the lumbar spine showed the claimant to have a 'mild' bulge at L4-5, but no evidence of any disc herniation." (R. 107). In other words, ALJ Lawrence concluded that Dr. Peddicord's diagnosis of herniated disc with lumbar radiculopathy and her opinion on Mason's physical limitations did not follow from the MRI or any other medical evidence. Putting aside the fact that the May 2005 MRI revealed "*broad based disc displacement or protrusion* at L4-L5 that is slightly greater on the left and narrowing the left neural foramen[,]" (R. 337-38) (emphasis added), and the fact that Dr. Peddicord had treated Mason for a number of years before rendering her opinion, (R. 105, 107), ALJ Lawrence failed

8

to reference any medical evidence to support her conclusion.[3] This was improper. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functioning terms and no medical opinion supported the determination." (citations omitted)); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." (citation omitted)); *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996) ("And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Lennon v. Apfel*, 191 F. Supp. 2d 968, 978 (W.D. Tenn. 2001) (remanding because the ALJ substituted his own judgment in place of a doctor's).

ALJ Lawrence did attempt to support her conclusion that Dr. Peddicord's opinion was inconsistent with the treatment notes by highlighting that "[t]reatment notes by Dr. Peddicord reveal that [Mason] has continued work as a construction laborer and roofer, yet, he did not advise [Mason] to discontinue this work." (R. 107). She also explained that "while [Mason] has alleged totally disability since November 2001, based upon these same allegations, the overall

---

[3] ALJ Lawrence referenced no medical evidence indicating that Dr. Peddicord's diagnosis of herniated disc with lumbar radiculopathy could not be supported by an MRI showing either bulging or broad based disc displacement or protrusion. According to the American Spinal Decompression Association's website, "the term 'bulging disc' is and should be used as a descriptive term, not a diagnostic term. [A]lthough 'bulging disc' is a popular term, it is usually not representative of what is really going on at the spinal level. It is used because it is easy to understand. Most people really have a herniated disc." *Bulging Disc*, American Spinal Decompression Association, http://www.americanspinal.com/bulging-disc.html (last visited Aug. 11, 2017). The site also provides that "[a] herniation begins when the inner nucleus pulposus bulges through the annulus fibrosis, causing a bulging or protruding disc." *Herniated Disc*, American Spinal Decompression Association, http://www.americanspinal.com/herniated-disc.html (last visited Aug. 11, 2017); *see also Chabot v. Comm'r of Soc. Sec.*, No. 13-cv-126-PB, 2014 U.S. Dist. LEXIS 69048, at *3 n.4 (D.N.H. May 20, 2014) (citing Stedman's Medical Dictionary for the proposition that "[d]isc protrusion is synonymous with a herniated disc and is the 'protrusion of a degenerated or fragmented invertebral d[isc].'").

record reveals that he has continued to perform heavy exertion while working for his brother and uncle in construction and roofing." (R. 107). But this is all irrelevant. According to ALJ Lawrence, Dr. Peddicord's treatment notes "reveal that Mr. Mason was working when seen on November 2003, March 2004, and September 2004." (R. 105). Dr. Peddicord rendered her opinion in July 2005 after the May 2005 MRI.

ALJ Spangler otherwise rejected Dr. Peddicord's opinion "because it [was] not supported by any current or relevant medical evidence" and because "there [was] no new and material evidence now that would suggest these limitations were in fact true at the time[.]" (R. 482). But simply stating that a treating physician's opinion is "not well-supported by an objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of an ALJ's assessment of that opinion. *See Gayheart*, 710 F.3d at 375-76. Instead, an ALJ's reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 376 (citation omitted). ALJ Spangler failed to clear this hurdle.

For starters, Dr. Peddicord's treatment notes from February 2014 state, "I don't see that [patient] can work in this condition." (R. 458). Additionally, in September 2014, Dr. Peddicord stated, "I don't feel [patient] is physically or emotionally able to engage in any work for gainful employment." (R. 470). Moreover, as explained above, Dr. Peddicord's opinion followed a May 2005 MRI that revealed "broad based disc displacement or protrusion at L4-L5 that is slightly greater on the left and narrowing the left neural foramen." (R. 337-38). A lumbar CT scan report from March 2012 explains, "[a]t the L4-L5 level there is a slightly greater broad based disc protrusion that is associated with relative central canal stenosis and some narrowing of both neural foramina. Study of the L5-S1 level also shows a broad based disc displacement or

mild protrusion but without significant narrowing of the neural foramina" (R. 277). Given the level of generality with which ALJ Spangler dismissed Dr. Peddicord's opinion, it is impossible for the Court to discern whether ALJ Spangler appreciated Dr. Peddicord's 2014 opinions or the apparent consistency between the 2012 CT and 2005 MRI. If he did, it is unclear why he thought these items were not "current or relevant medical evidence" that lent support to Dr. Peddicord's 2005 opinion. It appears that ALJ Spangler inappropriately substituted his judgment for Dr. Peddicord's opinion, which warrants the remand of this matter to the Commissioner. *See Nguyen*, 172 F.3d at 35; *Clifford*, 227 F.3d at 870; *Rohan*, 98 F.3d at 968; *Lennon*, 191 F. Supp. 2d at 978.

## V.    CONCLUSION

For the reasons discussed above, Defendant's objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation (DN 21) is **ADOPTED** to the extent it is not inconsistent with this opinion. This matter is **REMANDED** to the Commissioner of Social Security for a new decision pursuant to sentence four of 42 U.S.C. § 405(g).

**Greg N. Stivers, Judge**
**United States District Court**
August 18, 2017

cc:    counsel of record